# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00106-CV

**Daneshjou Company Inc. and M. B. "Benny" Daneshjou, Appellants**

**v.**

**Sandra Bullock; John W. Bullock, Trustee of Band-Aid Trust; Austin Air Conditioning; Austin Fine Floors; DMS Trading; Felipe Hernandez; Michael Hood; King's Contracting; LOC Consultants; Loma Excavation, Inc.; Wilberto Montiel; Perfect Lawns of Austin; Pfister Plumbing; QSI Custom Cabinets; Robert Bellamy Designs; Trim Ron; Raymond Sandoval; David V. Shrum; and Eddie Tausch; Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN101929, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Daneshjou Company, Inc. ("DCI") and M. B. "Benny" Daneshjou appeal from the judgment of the district court on claims arising from the design and construction of a house and grounds for Sandra Bullock and John W. Bullock, trustee of Band-Aid Trust. Appellants have settled their claims with the Bullocks and dismissed their appeal concerning those claims. They continue to pursue their appeal of the judgment concerning claims against construction superintendent David V. Shrum and various subcontractors who worked on the Bullock project.

Appellants contend that the trial court erred by (1) granting motions to dismiss or for summary judgment on claims involving certain subcontractors; (2) basing its judgment on the jury's assignment of responsibility to a number of the subcontractors; and (3) directing a verdict

on their DTPA and common-law indemnity claims against Shrum. Appellants also contend that insufficient evidence supports the jury's finding that Shrum's breach of his contract was excused, and that Shrum is not entitled to attorneys' fees from appellants. We reverse the assessment of attorneys' fees against Daneshjou, individually, and affirm the judgment in all other respects.

**Factual and Procedural Background**

Appellants designed and, with the assistance of numerous subcontractors, built a house and outbuildings, remodeled an existing house, and landscaped grounds for the Bullocks. Shrum was the superintendent for the project as a DCI employee from April 1998 to July 1999, and as an independent contractor from August 1, 1999 to March 1, 2000. The targeted completion date was December 31, 1999.

The house and outbuildings had structural and drainage problems—the nature, degree, and causes of which were disputed at trial. In March 2000, the Bullocks halted work by DCI. Some work intended to remediate particular problems continued at the Bullocks' direction. DCI sued the Bullocks for breach of contract and tortious interference with employment and business relationships, alleging that the Bullocks delayed construction of the project. The Bullocks counterclaimed against DCI and sued Daneshjou for breach of contract, statutory fraud, fraudulent inducement to contract, common-law fraud, deceptive trade practices, breach of express and implied warranties, and breach of fiduciary duty. They alleged that structures and improvements were negligently built and grossly substandard. Appellants then filed third-party claims against various subcontractors, raising claims centered on the premise that their work was deficient.

The district court granted several subcontractors' motions seeking dismissal or summary judgment, on both traditional and no evidence theories. The claims resolved by many of these judgments and orders of dismissal were severed and those judgments became final. Seven of the severed cases were appealed separately in cases decided in a consolidated opinion. *See Daneshjou Co. v. Goergen*, No. 03-04-00730-CV, 2008 Tex. App. LEXIS 6036 (Tex. App.—Austin Aug. 8, 2008, pet. denied) (mem. op.). Similar motions on claims involving other subcontractors were resolved before and during the trial, and others remained pending.

At trial, the jury made several findings concerning the proportionate responsibility for damages owed among appellants, Shrum, the Bullocks, and various subcontractors, some of whom were at trial, some of whom did not appear, and some of whom had been dismissed and severed from this case. The jury's findings that appellants committed acts that damaged the Bullocks are not challenged in this appeal due to the post-trial settlement between appellants and the Bullocks.[1] With regard to Shrum, the jury found as follows:

- that he breached his duties under the Independent Contractor Management Agreement effective August 1, 1999 by failing to handle the day-to-day

---

[1] To provide some context for the remaining findings, we will briefly recount some of the jury's findings regarding claims between the Bullocks and appellants. The jury found that appellants committed fraud against the Bullocks, engaged in false, misleading, or deceptive acts or practices that were producing causes of the Bullocks' damages, and engaged in an unconscionable action or course of actions that damaged the Bullocks. The jury also found that Daneshjou made a negligent misrepresentation on which the Bullocks justifiably relied. The jury awarded $2,145,000 in damages related to repair, demolition, and reconstruction of the house, as well as $400,000 for maintenance and loss of use through trial. The jury awarded $1,947,875 in actual damages from various overcharges. The jury also awarded a total of $1,402,125 in exemplary damages against appellants and awarded the Bullocks $1,184,332.19 in attorneys' fees.

3

management of on site operations at the River Hills Project, including scheduling, ordering of materials;

- that his failure to comply with the ICMA was excused; and

- that DCI failed to indemnify him for claims arising from the project and not caused by any fault of Shrum.

With respect to the subcontractors, the jury found:

- that King's Contracting, Wilberto Montiel d/b/a Will Construction, and Raymond Sandoval/Ultimate Roofing, Inc./Roof Tech Systems failed to comply with a warranty, which was a producing cause of damages to the Bullocks, and failed to comply with their contracts with DCI; and

- that Loma Excavation, Inc., Michael A. Hood, Felipe Hernandez, LOC Consultants, and Austin Fine Floors did not damage the Bullocks by breaching a warranty and did not breach a contract with DCI.

The jury apportioned responsibility for the Bullocks' damages as follows: DCI, 80%; Daneshjou, 17%; King's Contracting, Montiel, and Sandoval, 1% each; and Shrum, Loma, Hood, Hernandez, LOC, and Austin Fine Floors, 0% each. The jury also found that a reasonable fee for Shrum's attorney for trial was $133,407.39.

**Discussion**

Appellants raise several complaints regarding the district court's rulings. Appellants complain that evidence raising genuine issues of material fact renders summary judgments granted to appellees erroneous. They contend that the trial court erred by admitting evidence concerning the work of subcontractors who had been dismissed or granted summary judgment because that evidence prejudiced the jury against appellants. Appellants also contend that the court erred by

4

directing a verdict for Shrum and refusing to submit appellants' requested jury submissions concerning their claims for DTPA violations and common-law indemnity. Appellants contend that the jury's finding that Shrum's breach of his contract with appellants was excused is not supported by legally and factually sufficient evidence. Appellants also assert that the trial court erred by rendering judgment in conformity with the jury's verdict that Shrum and several subcontractors had no responsibility for the Bullocks' damages and that three subcontractors each had 1% responsibility for the Bullocks' damages. Appellants also contend that the district court erred in awarding attorneys' fees to Shrum.

*Gaps in the Record*

Some documents relating to the dismissals and summary judgments challenged by appellants are absent from the record. Appellants assert without dispute that some of the documents were never filed with the trial court, but were merely transmitted among the parties. This includes a number of the motions for summary judgment or dismissal, appellants' responses, and the orders on the motions.[2]

Although the summary judgment movants bear the burden to demonstrate their entitlement to relief at the trial court, the appellants bear the burden on appeal to bring forward the record of the summary judgment evidence to provide the appellate courts with a basis to review

---

[2] Claims for which a specific judgment or dismissal is missing can ultimately be considered resolved against appellants as a result of the clause in the judgment denying all relief not expressly granted. The judgment expresses the intent that the judgment finally dispose of all parties and issues not disposed of otherwise. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001).

their claim of harmful error. *See* Tex. R. App. P. 33.1, 34.5(a); *Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004). If pertinent motions or evidence considered by the trial court are not included in the appellate record, an appellate court must presume that the omitted motions or evidence support the trial court's judgment. *Barrios*, 156 S.W.3d at 550; *Mallios v. Standard Ins. Co.*, 237 S.W.3d 778, 782 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

### *Claims severed*

Appellants' claims against LOC Consultants and Loma Excavation are not properly part of this appeal. All claims involving Loma Excavation were determined and severed into trial court cause number GN-403033 by order signed August 26, 2004, and all claims against LOC were severed into a separate proceeding given the trial court cause number GN-403689 by order signed October 6, 2004.[3] The notice of appeal in this cause, No. GN-101929, filed after both severances, did not serve to appeal the judgments or any rulings concerning the severed claims by appellants against LOC or Loma. Accordingly, issues relating to the trial court's rulings regarding the claims against LOC and Loma are not part of this appeal.

### *Claims dismissed for untimely service*

Claims against Eddie Tausch and Pfister Plumbing were apparently dismissed because of untimely service of citation. The appellate record lacks the motions to dismiss by these parties

---

[3] We have affirmed the judgment regarding the claims against Loma in a separate appeal. *See Daneshjou Co. v. Loma Excavation, Inc.*, No. 03-04-00738-CV, 2008 Tex. App. LEXIS 6036, at *19-24 (Tex. App.—Austin Aug. 8, 2008, pet. denied) (mem. op.). We do not know the status of the claims against LOC, except that they were severed from the claims in this case and there was some conversation on the record at this trial of holding a separate trial. However, appellants and LOC in their briefs describe LOC as a settling party.

6

and any order granting such motions. We find no written order or record of a ruling disposing of the claims relating to Pfister and Tausch other than the final judgment denying all relief not granted. Pfister filed a brief, but Tausch did not. Appellants contend that we do not need the motion or order to reverse the dismissal of claims against Pfister because the unfairness of the dismissal overcomes any unfairness from reversing in the absence of a record. Appellants contend that their diligence in attempting to serve Tausch is reason enough to reverse the dismissal. Neither the record, the argument, nor comparison to our decision in a related case persuade us that reversal of these dismissals is warranted.

In their motion for judgment notwithstanding the verdict, appellants contended that the trial court erred by dismissing their claims against Tausch for untimely service, asserting that they:

> made diligent efforts after that date to timely serve the parties, but they were permitted only a short time in which to do so. Therefore, DCI and Daneshjou have demonstrated that they acted with due diligence in serving Tausch. Thus, the Court should not have dismissed Tausch in the face of DCI and Daneshjou's diligence, despite the fact that Tausch [was] served two or three days after the deadline.

Appellants did not cite to or supply evidence of this diligence in their motion, nor did they assert when service was accomplished. Appellants reiterate these assertions on appeal without citation to or inclusion of any evidence.

The parties do not dispute that Tausch was not served timely. We previously rejected appellants' similar argument concerning claims against another defendant, G. P. Equipment Co., which were dismissed based on untimely service and severed from the underlying suit. *Daneshjou*,

2008 Tex. App. LEXIS 6036, at *6-8. As noted in that opinion, the trial court signed an amended scheduling order in the underlying suit on November 23, 2003—more than two years after the original petition was filed and almost three months after the fifth amended petition was filed joining new defendants.[4] The court set a deadline for service of citation of November 30, 2003. Although DCI contended that it diligently attempted service in the short time allotted, we found no abuse of discretion when the court dismissed the claims against GP because citation was served on December 2, 2003. *Id.* As with the claims against GP, the record here does not provide a basis on which to reverse the dismissal of the claims against Tausch.

Although the parties disagree as to whether Pfister's motion sought dismissal or summary judgment, they agree that the basis of the motion was untimely service and that the court granted the motion. Appellants make no specific allegations of error or citations to evidence regarding Pfister. Neither the record nor the briefs provide anything other than appellants' bare assertion that the court did not permit them sufficient time to serve Pfister. As with Tausch and GP, there is no evidence or argument that Pfister was served in a timely fashion. The record and arguments provide no basis on which to reverse the dismissal of claims against Pfister.

***Summary judgments***

Appellants contend that the trial court erred by granting summary judgments on claims against Loma, Perfect Lawns of Austin, Robert Bellamy Designs, QSI Custom Cabinets, Inc.,

---

[4] Although the Amended Scheduling Order is not part of the record in this appeal, the docket sheet in this case contains an entry consistent with the order being signed on November 23, 2003, and filed on November 25, 2003.

DMS Trading, Austin Air Conditioning, and Pfister Plumbing. Appellants discuss and argue evidence concerning only Loma and Perfect Lawns. Regarding the remaining appellees, appellants stated, "Appellants presented similar evidence opposing the motions for summary judgment of the additional parties: Bellamy, QSI, DMS, Austin A/C, and Pfister."[5] This bare assertion is not supported by any citation to the record, and therefore, error on this point is waived. *See* Tex. R. App. P. 38.1(i);[6] *Tri-Steel Structures, Inc. v. Baptist Found.*, 166 S.W.3d 443, 452 (Tex. App.—Fort Worth 2005, pet. denied). As discussed above, the claims involving Loma were severed from this suit below and are not part of this appeal. We will examine the no evidence summary judgment granted on claims against Perfect Lawns.[7]

---

[5] It is not clear that appellants intend to challenge the judgment as to all seven appellees. In the first sentence of the paragraph ending the summary judgment discussion—just after discussing evidence against Loma and Perfect Lawns and asserting that they presented evidence against five other appellees—appellants state, "Thus, Appellants presented to the lower court more than sufficient evidence to refute the claims of 'no-evidence' relative to the work of the three movants."

[6] "The brief must contain a clear and concise argument for the contentions made, *with appropriate citations to authorities and to the record*." Tex. R. App. P. 38.6(i) (emphasis added). Appellants assert that their replies to the summary judgment motions were not filed by the trial court. As discussed above, those gaps in the record are construed against them on appeal. *See* Tex. R. App. P. 33.1, 34.5(a); *Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004).

Application of rule 38.6(i) requires affirmance of the judgment favoring Trim Ron, who is listed as an appellee but not otherwise mentioned in appellants' brief except in a quote from the judgment.

[7] Perfect Lawns contends that appellants' settlement with the Bullocks bars all of appellants' claims. Although appellants initially described their claims against the third parties as a breach of contract claim and derivative claims (for contribution or indemnity) for the remainder of the causes of action brought by the Bullocks against appellants, in their motion for reconsideration of the partial granting of the motions for summary judgment, appellants recharacterized their non-contract complaints as including both derivative and direct claims. Read broadly, appellants' petition supports the latter characterization, which means that their claims theoretically survive the preclusive effect that settlement of one's own liability has on claims for contribution. *See*

9

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The filing of a no evidence motion places the burden on the non-moving party to present evidence raising an issue of material fact as to the elements specified in the motion. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). We consider the evidence in the light most favorable to the non-movant and resolve any doubt in the non-movant's favor. *See Tamez*, 206 S.W.3d at 582; *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). If a trial court's order does not specify the ground on which summary judgment is granted, the judgment will be affirmed if any theory advanced and preserved for appellate review is meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

Appellants alleged that Perfect Lawns, along with Loma, performed the grading work for surface draining and drainage patterns. Appellants also alleged that Perfect Lawns, along with Robert Bellamy Designs, performed the landscaping, landscaping architecture, and irrigation for the project. In their brief, appellants assert that they produced evidence raising a material fact issue about Perfect Lawns's responsibility for the Bullocks' damages. The cited excerpts from the report of June Melton—Bullock's consulting engineer—discuss drainage problems but do not mention, much less assign blame, to Perfect Lawns. Rather, Melton prefaces his drainage discussion as follows:

---

*Beech Aircraft Corp. v. Jinkins*, 739 S.W.2d 19, 22 (Tex. 1987); *Filter Fab, Inc. v. Delauder*, 2 S.W.3d 614, 617 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

From all available information it appears that the Architect failed to consult with a civil engineer who could have assisted in the preparation of a proper site plan. The Architect's failure resulted in the foundation being set too low with respect to the surrounding grades. This failure led to a continuing chain of unfortunate events and extraordinary waste.

In another report, DCI's expert Larry Parker rejects some of Melton's conclusions, opining instead on the involvement of the "Owner" in decisions that led to drainage problems. Again, however, there is no mention of any act or omission by Perfect Lawns. Only in his affidavit does Parker mention Perfect Lawns, asserting:

Perfect Lawns of Austin was responsible for coordinating with Robert Bellamy to provide the labor and installation of the landscaping plan's materials. They applied the layer of topsoil and berms on the project. In the Melton report, pooling may be caused in part by improper grading, and may be related to the use of berms around trees in the front yard. I concur with Melton's findings.

Parker's affidavit does not establish what Perfect Lawns did or failed to do that damaged the Bullocks. The affidavit does not establish whether or how Perfect Lawns was negligent, breached a warranty or contract, engaged in a deceptive trade practice, or otherwise harmed appellants. Appellants also referred in their response to the motion for summary judgment to a deposition of Loma owner Jim Burton, but that document is not attached to that pleading. The arguments and record do not support a conclusion that the trial court erred by granting Perfect Lawns's no evidence motion for summary judgment. The summary judgments favoring Robert Bellamy Designs, QSI Custom Cabinets, Inc., DMS Trading, Austin AC, and Pfister Plumbing are also affirmed.

11

*Trial*

The evidence at trial included several weeks of testimony and more than a thousand exhibits. The evidence focused on damages asserted to have resulted from subpar construction and from billing disputes. There was consensus that the project needed additional work, but disputes existed over the source, nature, and severity of the problems, as well as the nature, extent, and cost of the solutions.

Generally, appellants' evidence tended to show that the problems with the project emanated from indecision, a rushed schedule, interference, and failure to remedy or mitigate by the Bullocks; substandard work by subcontractors; and inadequate supervision by Shrum. Other evidence tended to show that the Bullocks were decisive and responsive, that appellants' allocation of resources left Shrum with inadequate numbers of workers and caused the rush, and that Daneshjou's design and plans were the fundamental and inescapable source of the main house's structural problems. Appellants' evidence suggested that a few well-planned repairs would remedy defects throughout the project for a relatively low price, while other witnesses testified that the roof could collapse at any moment and that removal and replacement of the roof was required. One witness advocated bulldozing the main house entirely. The dispute over billings centered on what items were included as costs in the cost-plus contract, what the parties agreed to concerning multiplier rates for such things as overhead, and whether labor supplied by appellants and their affiliated company was properly billed. Appellants adduced evidence that the billings were essentially proper, that improper billings had been addressed at the end of the contract, and that the

12

Bullocks agreed to and understood all of the contract terms and approved the billings including the charges for in-house labor. The Bullocks presented evidence to the contrary.

Appellants raise several issues challenging evidentiary rulings, the jury charge, and the verdict and judgment. They contend that evidence of their indemnity agreements with the various subcontractors should have been admitted at trial, and contend that evidence concerning the work of dismissed parties should not have been admitted at trial. They also challenge the court's inclusion of LOC as well as the omission of other subcontractors in the proportionate responsibility question in the charge. In addition, appellants raise several complaints about the trial as it concerns Shrum. They contend that the trial court should not have directed a verdict for Shrum on DCI's claim for common-law indemnity from Shrum and for damages due to his violation of the DTPA. They argue that the evidence was legally and factually insufficient to support the jury's findings that DCI's breach of its contract with Shrum excused Shrum's performance (and, therefore, his breach of that contract), and that Shrum had no responsibility for the Bullocks' damages. Appellants similarly contend that the evidence was legally and factually insufficient to support the findings that three of the subcontractors each bore only 1% of the responsibility for the Bullocks' damages, and that the remainder of the subcontractors bore none. Finally, appellants contend that Shrum is not entitled to attorneys' fees.

Exclusion of evidence regarding indemnity

Appellants assert that they were entitled to admission of evidence concerning indemnity agreements between themselves and Austin AC, Perfect Lawns, and Cascade Pools

13

despite the summary judgments granted to those appellees on the indemnity claims.[8]  Appellants assert that the summary judgments were erroneously granted.  As we concluded in the previous related appeals with respect to claims against other subcontractors, the trial court did not err by granting summary judgment against appellants on their claims for indemnity. *Daneshjou*, 2008 Tex. App. LEXIS 6036, at *30-35.  We reiterate that analysis here.

Indemnity agreements must provide fair notice to be enforceable. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508-09 (Tex. 1993).  The fair notice requirement comprises the express negligence doctrine and conspicuousness.  *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004).  The express negligence doctrine requires that an intent to indemnify one of the parties from the consequences of its own negligence must be specifically stated in the four corners of the document.  *Id*. at 192.  Compliance with the express negligence requirement is a rule of contract interpretation and, thus, a question of law for the court.  *Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994).  The conspicuousness requirement mandates that something appear on the face of the contract to attract the attention of a reasonable person.  *Reyes*, 134 S.W.3d at 192.  Language is conspicuous if it appears in larger type, contrasting colors, or otherwise calls attention to itself.  *Dresser*, 853 S.W.2d at 511; *see also* Tex. Bus. & Com. Code Ann. § 1.201(b)(10) (West Supp. 2008).  Whether an agreement meets the conspicuousness requirement is a question of law for the court.  *Dresser*, 853 S.W.2d at 509.

---

[8] Appellants also complain about the exclusion of evidence of indemnity agreements relating to Loma.  Loma was severed from this case below, the rejection of the indemnity claim against Loma has been affirmed, and the petition for review denied.  *Daneshjou*, 2008 Tex. App. LEXIS 6036, at *30-35.

An agreement that does not satisfy either of the fair notice requirements is unenforceable as a matter of law, unless both contracting parties have actual knowledge of the contract's terms. *Reyes*, 134 S.W.3d at 192.

There was no evidence that appellants had valid indemnity agreements with these appellees. No written contract relating to their obligations or duties in the record contains an indemnity clause. There is no allegation or evidence that these appellees otherwise agreed to indemnify appellants when agreeing to work on the house. The indemnity language that appellants tout is printed on a check for payment rather than as part of a writing memorializing the parties' agreement regarding work to be performed or materials to be supplied. It is in the midst of the paragraph discussing the various effects of accepting payment, including release of liens and relinquishment of claims. Although it appears in a paragraph above the signature line on a page attached to a check, the indemnity language is inconspicuous as it is in small print in the midst of other topics printed in similarly sized and colored type.[9] There is no evidence that additional consideration was paid in exchange for the alleged agreement to indemnify proposed as a part of the payment. An inconspicuous indemnity provision simply added to a check for payment after the formation of the original contract, without more, is not enforceable. *See Dresser*, 853 S.W.2d at 511. The summary judgments on these claims were supported. Appellants were not entitled to present evidence to the jury on their indemnity claims that had already been resolved as a matter of law on summary judgment.

---

[9] As reproduced in the documents in the record, the indemnity language, along with the rest of the paragraph, appears to be in six-point type.

15

Admission of evidence concerning dismissed parties

Appellants contend that the trial court erred by dismissing various subcontractors before trial as a matter of law and then admitting evidence of those parties' work on the project. The court dismissed appellants' claims against several subcontractors after the Bullocks settled their unfiled claims against those subcontractors. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.015(d) (West 2008) ("No defendant has a right of contribution against any settling person."). Appellants complain that admission of evidence concerning the work performed by those subcontractors was unfairly prejudicial to appellants because evidence of the subcontractors' defective work was in the record, but the subcontractors were not at trial to have their share of responsibility assessed. Appellants contend that their contribution and indemnity claims were adversely affected by this procedure. Appellants contend that the admission of the evidence and the absence of the subcontractors explains why appellants collectively bear a 97% share of the responsibility for damages assessed by the jury.

Although we have concluded that the trial court did not err by granting the motions for summary judgment and dismissal that were presented for our review,[10] whether evidence of the dismissed parties' work should have been admitted is a separate question. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005); *Goodson v. Castellanos*, 214 S.W.3d 741, 754 (Tex. App.—Austin 2007, pet. denied).

---

[10] With respect to claims for contribution, any error in granting summary judgment on or dismissal of the contribution claims was waived or rendered harmless when appellants settled their claims with the Bullocks. *See Daneshjou*, 2008 Tex. App. LEXIS 6036, at *28-30; *see also Jinkins*, 739 S.W.2d at 22; *Filter Fab*, 2 S.W.3d at 617.

A trial court abuses its discretion if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995); *see also Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403.

Appellants' argument rests in large part on the premise that the admission of the evidence of conduct of absent third parties was unfairly prejudicial because proportionate responsibility of persons dismissed from the case could not be assigned to them in their absence.[11] This argument ignores the statutory procedure for submitting an issue concerning the responsibility of settling persons and third parties. The proportionate responsibility statute expressly authorizes the trier of fact to determine the percentage of responsibility for each claimant, defendant, settling person, and designated responsible third party in cases involving negligent acts or omissions, defective or unreasonably dangerous products, or other conduct or activities that violate an applicable legal standard such as a warranty.[12] *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a) (West 2008); *see also JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 707 (Tex. 2008). A "settling person" is "a person who has, at any time, paid or promised to pay money or anything of monetary

---

[11] The fact that the three subcontractors found responsible for 3% of the Bullocks' damages did not appear at trial blunts the argument that the jury would blame the parties at trial to the exclusion of others.

[12] The proportionate responsibility statute does not apply to contract claims. *See Doncaster v. Hernaiz*, 161 S.W.3d 594, 604 (Tex. App.—San Antonio 2005, no pet.).

value to a claimant in consideration of potential liability with respect to the personal injury, property damage, death, or other harm for which recovery of damages is sought." *Id*. § 33.011(5). Under this statute, appellants could have requested submission of a jury question regarding the proportionate responsibility of the subcontractors who settled with the Bullocks. Indeed, a question regarding Loma's share of the responsibility was submitted even though the claims against Loma had been resolved and severed before trial.

Evidence regarding the allegedly subpar work by various subcontractors was relevant to many claims. It was relevant to the proportionate responsibility of subcontractors submitted to the jury, and could have benefitted appellants by prompting the jury to apportion a greater share of responsibility to the subcontractors who had settled and were not at trial defending themselves. Evidence of the subcontractors' work was probative of whether appellants delivered the house that appellants agreed to construct in compliance with any applicable contract or warranty. Also, the quality of the subcontractors' work potentially pertained to whether appellants or Shrum could be held responsible for allowing substandard work to stay uncorrected. The quality of the house designed by Daneshjou and built by DCI was one of two central issues (along with the billing disputes) in this case. We are not persuaded that evidence regarding the quality of the house built for the Bullocks was unfairly prejudicial to its designer and builder simply because the third-party subcontractor potentially responsible for a particular task was absent from the trial after settling with

18

the Bullocks.[13]  Appellants have not shown error in the admission of evidence of the dismissed or severed subcontractors' work.

Submission of questions regarding proportionate responsibility of subcontractors

Appellants also complain about the questions submitted regarding the proportionate responsibility of subcontractors.  They contend that the trial court erred by allowing the jury to assign responsibility to LOC.  They also complain that the trial court erred by not allowing the jury to assign responsibility to other subcontractors, some of whom were severed before trial after the claims against them for contribution and indemnity were rejected either through summary judgment or dismissal.

Appellants contend that including LOC in the jury charge was improper because LOC was a settling party.  They contend that the addition of LOC in the charge and the entering of a take nothing judgment prejudiced appellants because the trial court had severed LOC from this case.  Appellants failed to preserve this error by objecting to the inclusion of LOC in the charge.  *See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 274.  While we agree that LOC was severed from this case and is not properly a party to this appeal, we do not agree that the trial court erred by submitting a question concerning LOC's proportionate responsibility.  Even if LOC did settle before submission, the statute specifically authorizes the fact-finder to determine the percentage of responsibility

---

[13]  As we will discuss next, appellants could have requested that the court ask the jury a question regarding the allocation of a portion of the responsibility to any settling person.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)(3) (West 2008).

19

attributable to a settling party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)(3).[14] Appellants alleged that LOC failed to perform its obligations adequately, and there was evidence in the record concerning its performance. Even if the submission of LOC were erroneous, appellants have shown no harm from the entry of a take nothing judgment against a defendant whose responsibility they argue should not have been submitted. Although LOC is not properly an appellee in this appeal, the submission of a question regarding its share of responsibility was not an error in this trial.

Appellants assert that "other remaining subcontractors that were not held accountable for a proportion of the fault for the defective construction likewise must be brought to court for a trial on the merits regarding their work on the project." They assert that they were entitled to contribution from subcontractors who were dismissed before trial. They complain that evidence concerning these subcontractors' "defective work performance" was presented to the jury, increasing the damage award to the Bullocks without a concordant apportionment of responsibility to the subcontractors who did the work. These contentions lack merit or have been waived.[15] To the extent

---

[14] There is a distinction between permitting the determination of the proportionate responsibility of a settling party and prohibiting a plaintiff from obtaining contribution from a settling party. *Compare* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)(3), *with id.* § 33.015 (West 2008). Both are consistent with seeking to have parties pay the share of damages for which they are responsible while encouraging settlement. Permitting a jury to consider the proportionate responsibility of settling parties along with that of non-settling parties permits a more accurate assessment of responsibility and liability and avoids automatically holding a defendant responsible and liable for all of a plaintiff's damages because it is the last non-settling defendant. The prohibition of obtaining contribution from settling defendants encourages settlement by allowing a settling defendant to fix his liability. A defendant would have little incentive to settle its liability if it could later be required to contribute to payment of a damage award assessed against another party.

[15] We concluded in the previous appeals that any error in dismissing appellants' contribution claims against parties who settled with appellees was waived or rendered harmless by appellants' settlement with the Bullocks. *Daneshjou*, 2008 Tex. App. LEXIS 6036, at *28-30. Because a party can settle only its proportionate share of responsibility, a settling party has no right to obtain

20

appellants refer to subcontractors whose take nothing summary judgments on the merits we have affirmed, we find no error or harm in failing to submit their share of the responsibility because there is no legal basis on which the jury could assess responsibility against parties judicially determined to have no responsibility. To the extent appellants refer to subcontractors who were dismissed after settling their liability directly with the Bullocks, a question regarding those subcontractors' proportionate responsibility could have been submitted to the jury had it been requested just as it was with respect to LOC and Loma. Appellants do not direct us to a properly preserved complaint in the record that the court erroneously failed to submit a question requested by appellants regarding the proportionate responsibility of any party.[16] *See* Tex. R. Civ. P. 278; *Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 892 (Tex. App.—El Paso 2005, pet. denied). Appellants have not raised an issue concerning the trial court's submission of proportionate responsibility that requires reversal.

Judgment on claims involving Shrum

Appellants challenge several aspects of the trial court's judgment with respect to their claims against Shrum. Appellants contend that the court erred by directing a verdict on their claims for common-law indemnity and for violations of the DTPA by Shrum. They further contend

---

contribution to the settlement from other alleged tortfeasors. *Jinkins*, 739 S.W.2d at 22; *Filter Fab*, 2 S.W.3d at 617. Having settled their own liability with the Bullocks, appellants have waived their asserted entitlement to contribution from other parties. There is no basis in the record on which to reverse the dismissal of appellants' contribution claims against subcontractors for what is now, as a matter of law, appellants' liability. *Jinkins*, 739 S.W.2d at 22.

[16] Appellants assert that the trial court refused to submit a question regarding the negligence of the subcontractors to the jury. They do so, however, in the context of their claim for contribution. Because there is no error in the trial court's rejection of the contribution claim, appellants have presented no reversible error concerning the negligence issue.

21

that no evidence or factually insufficient evidence supports the jury's finding that Shrum's breach of his contract was excused. Appellants also argue that no evidence or factually insufficient evidence supports the jury's findings that Shrum was responsible for none of the Bullocks' damages. Appellants further contend that Shrum is not entitled to attorneys' fees under either a contract or DTPA theory as a matter of law. Daneshjou asserts that Shrum is not entitled to attorneys' fees from him because Shrum did not have a contract with him and the trial court's finding that Daneshjou's DTPA claims were groundless or brought in bad faith was erroneous as a matter of law because Daneshjou did not individually plead a DTPA cause of action against Shrum.

### *Directed verdict on indemnity and DTPA claims*

Appellants contend that the trial court erred by directing a verdict in Shrum's favor on appellants' claims for common-law indemnity and violations of the DTPA by Shrum. A directed verdict is proper when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or when the plaintiff admits or the evidence conclusively establishes a defense to the plaintiff's cause of action. *Prudential Ins. Co. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). An appeal from the denial of a motion for directed verdict is in essence a challenge to the legal sufficiency of the evidence. *Solares v. Solares*, 232 S.W.3d 873, 878 (Tex. App.—Dallas 2007, no pet.). When reviewing a directed verdict, we view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983). If there is any conflicting

22

evidence of probative value that raises a material fact issue on any theory of recovery, that issue should be submitted to the jury. *Szczepanik*, 883 S.W.2d at 649; *White*, 651 S.W.2d at 262.

Appellants contend that the evidence raised a material fact issue concerning whether Shrum owed appellants a common-law duty to indemnify them. We conclude that appellants have not shown error or harm. Common-law indemnity persists in situations of purely vicarious liability. *Aviation Office, Inc. v. Alexander & Alexander, Inc.*, 751 S.W.2d 179, 180 (Tex. 1988). "[I]n a case in which one defendant's liability is premised solely on respondeat superior, that defendant's liability is purely vicarious, and a claim for common law indemnity exists." *Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.*, 127 S.W.3d 134, 138 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A defendant whose liability is not purely vicarious may be entitled to contribution, but he is not entitled to common-law indemnity. *See Aviation Office*, 751 S.W.2d at 180. The Bullocks did not assert that appellants were vicariously liable for Shrum's acts and omissions. Rather, they asserted claims based on acts and omissions by Daneshjou and DCI, some of which were not attributable to Shrum. Appellants were not entitled to a jury question on the issue of common-law indemnity, and the court did not err by granting the motion for directed verdict on that issue. Further, the jury's findings that Shrum has zero responsibility and appellants have 97% responsibility for the Bullocks' damages illustrate that the absence of a common-law indemnity question did not harm appellants.

Appellants also assert that the trial court erred by granting Shrum's motion for directed verdict as to the DTPA claims. Warranties must exist under common-law or statute before they can be enforced through the DTPA. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438

23

(Tex. 1995). Appellants alleged that Shrum breached a warranty by failing to perform his duties as superintendent in a good and workmanlike fashion, and failing to monitor, inspect, and control all aspects of the construction of the house. Shrum contends that he made no express warranties and that implied warranties do not attach to the services he provided.

We find no evidence of express warranties from Shrum to appellants. The ICMA between Shrum and DCI states that "Shrum shall devote sufficient time to the Project to complete the Project within the time proposed in the schedule and in a professional manner." The ICMA states that it is the entire agreement between the parties and that "[a]ny other agreements or representations respecting this Agreement not expressly set forth in this Agreement are null and void." There is no evidence of express warranties from Shrum to appellants.

There is also no evidence of any implied warranties. An implied warranty arises by operation of law when public policy mandates. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 353 (Tex. 1987). There must be a compelling need to justify an implied warranty for service transactions. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 467 (Tex. App.—Dallas 2006, pet. denied) (citing *Rocky Mtn. Helicopters, Inc. v. Lubbock County Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex. 1998)). A compelling need for an implied warranty does not exist where other adequate remedies are available. *Rocky Mtn.*, 987 S.W.2d at 53. Where a party has negligence and/or breach of contract claims available, an implied warranty does not arise. *Id.*; *see also Codner v. Arellano*, 40 S.W.3d 666, 672-75 (Tex. App.—Austin 2001, no pet.). The supreme court has recognized an implied warranty to repair or modify existing tangible goods in a good and workmanlike manner when a seller of a manufactured home failed to properly install or

24

repair plumbing in the home. *Melody Home*, 741 S.W.2d at 353-54. There is no evidence, however, that Shrum actually repaired or modified any tangible goods. The only evidence is that, while a DCI employee and as an independent contractor, he supervised subcontractors who did so. More important, however, appellants had contract remedies that were submitted to the jury. The trial court did not err by granting directed verdict on and refusing to submit to the jury questions regarding appellants' claims for relief for breaches of warranties by Shrum.

*Shrum's lack of responsibility for Bullocks' damages*

Appellants challenge the evidentiary support for jury findings that resulted in Shrum being responsible for none of the Bullocks' damages. Although the jury found that Shrum breached his contract with DCI, it also found that his breach was excused by DCI's acts or omissions. The jury separately found that Shrum was responsible for zero percent of the damages to the Bullocks. Appellants contend that these findings are not supported by legally or factually sufficient evidence.

In determining whether there is legally sufficient evidence to support the finding under review, we examine the record for evidence and inferences that support the challenged finding, while disregarding all contrary evidence and inferences. We must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When an appellant attacks the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). A party challenging the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof

25

at trial must demonstrate on appeal that the evidence conclusively established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). A legal sufficiency challenge may be sustained when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816.

In determining a factual sufficiency challenge, we weigh and consider all the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When conducting a factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id*. When an appellant attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Similarly, when an appellant attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, the appellant must demonstrate on appeal that the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Dow*, 46 S.W.3d at 242.

26

Appellants contend that no evidence supports the jury's finding that Shrum's breach was excused by their conduct. The jury found that Shrum breached his duties under the ICMA by failing to handle the day-to-day management of onsite operations including scheduling and ordering of materials. This finding is not challenged on appeal. The jury also found that at least one of the following conditions existed that excused Shrum's breach of his contract: (1) appellants' conduct that prevented or materially hindered his ability to fulfill the contract, (2) appellants' waiver, or (3) appellants' previous failure to comply with a material obligation of the contract.

Before reviewing the sufficiency of the evidence, we must know the elements against which that evidence is measured. Appellants contend that Shrum, to prove his failure to perform was excused, had to show that appellants prevented or materially hindered his performance and that they did so wrongfully, citing *S.K.Y. Inv. Corp. v. H. E. Butt Grocery Co.*, 440 S.W.2d 885, 889-90 (Tex. Civ. App.—Corpus Christi 1969, no writ). The question the jury was asked, however, did not include the word "wrongful." The longstanding rule does not require that the prevention or hindrance be wrongful to excuse performance, merely that it must prevent or materially hinder performance. *See Sanderson v. Sanderson*, 109 S.W.2d 744, 749 (Tex. 1937). As the Fort Worth court explained:

> The law is that if one party to a contract is prevented by the acts of the other party to the contract from performing such contract, then the party so prevented from performing is excused from further performance of the contract. His failure to perform under those circumstances cannot be made the basis of an action for damages for a breach of the contract.

27

*L. H. Land Painting Co. v. S & P Constr., Inc.*, 516 S.W.2d 14, 16 (Tex. Civ. App.—Fort Worth 1974, writ dism'd); *see also Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("Prevention of performance by one party excuses performance by the other party, both of conditions precedent to performance and of promise."); *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 239 (Tex. App.—Corpus Christi 1994, writ denied). Accordingly, we will review whether legally and factually sufficient evidence supported the jury's finding that appellants prevented or materially hindered Shrum from fulfilling his duties under the contract without factoring in the wrongfulness of appellants' conduct.[17]

Shrum refers to key acts or omissions by appellants that prevented or materially hindered him from fulfilling his duty to schedule subcontractors and order materials and ultimately complete the project timely and professionally. There was evidence that appellants prepared inadequate plans and their failure to timely pay for supplies and workers led to shortages of material and labor. Shrum contends that the absence of detailed plans hindered his ability to timely and professionally complete the house. Melton testified that the lack of plans often left the workers to their own devices. David Shiflet described the plans as minimal, and testified that anyone building this house without the assistance of a structural engineer would not be using good judgment. Loredo Truss and DCI's structural engineer expert Gary Sweatt testified that he would expect that a

---

[17]    Appellants have not preserved or presented a complaint about the absence of "wrongfulness" from the jury charge, and cannot use a sufficiency challenge as an end-run around the preservation requirement. Even if the law required wrongfulness, the jury charge submitted without objection to the absence of the wrongfulness element provides the elements of the cause of action against which we must assess the evidence. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001).

structural engineer would have been hired to create a structural framing plan for a building of this expense, but none was. Civil engineer Michael Skoller, who disagreed with Melton's conclusions and opined that hiring a structural engineer was the owner's responsibility, nevertheless testified that the retrofitting of the roof alone would require multiple pages of plans. Parker testified that, despite his expertise and experience, he could not have built the house from the plans provided.

Shrum testified that he had difficulty getting materials because a number of DCI's accounts were closed due to tardy payments. Shrum testified that, while he was a DCI employee, Daneshjou asked him to watch the Bullocks' mailbox and intercept a notice of lien that was being mailed there. Shrum said that a tile contractor refused to return to the jobsite because Daneshjou had not paid him $1,900 for work done at Daneshjou's house and had accused him of stealing tile and damaging carpet. Shrum testified that he anticipated a sheetrock shortage due to general demand, but was not allowed by appellants to stockpile it. Shrum did not have the authority to hire and fire subcontractors, and Shrum testified that appellants' refusal to timely pay some subcontractors caused them to refuse to work or to assign insufficient staff to finish the job promptly. Shrum testified that the accumulated lag from these practices left too much to do in the five months between when Shrum became an independent contractor and the December 31, 1999 date targeted for completion. He said that the work during that period should have been spread out over ten months or more, and that the compression made the worksite chaotic and difficult to supervise. Shrum testified that, although Daneshjou promised to pay subcontractors within a day of receiving their bills, he delivered on that promise for only about a week. Shrum testified that, although some of the work was substandard, the bigger problem with the project was that the work was not completed.

29

Appellants presented evidence that the plans, supplies, and labor were sufficient and that they were not the cause of Shrum's breach. Daneshjou testified that he needed fewer plans because he was the designer and the builder, and Shrum agreed that was possible. Daneshjou also testified that Sandra Bullock's schedule prevented him from consulting with her enough to make a full set of plans before beginning construction. Terry Ortiz, an LOC engineer, testified that most houses do not have engineered framing plans. Daneshjou testified that more drawings were made onsite that were taken or destroyed without being put into evidence. Shrum also acknowledged that a contractor could have valid reasons not to pay a subcontractor or supplier. Daneshjou's secretary, Stephanie Montemayor, testified that coordinating bill approval with Sandra Bullock's travel and work schedule delayed some payments. Appellants point to the flurry of activity during the last five months of 1999—when Shrum testified that there were as many as 150 workers onsite—as belying his testimony that appellants did not provide enough workers. Daneshjou testified that the Bullocks were slow with some decisions and often late with payments, causing delays. DCI's general manager Russell Gustafson testified that rains delayed framing about three to five weeks and that preparing the house for a Bullock family wedding in April 1999 set the project back about two weeks. There was testimony that completion of the house was also secondary to making the house ready for a New Year's Eve party in December 1999. Appellants contend that Shrum failed to show how any alleged payment issues prevented him from performing. Several witnesses opined that an attentive superintendent should have caught many of the substandard aspects of the construction and seen that they were corrected. Appellants also argue that Shrum failed to prove that they breached the ICMA before he did.

We conclude that legally and factually sufficient evidence supports the jury's finding that Shrum's performance was excused because it was materially hindered or prevented by appellants' conduct. Even if appellants' delayed payment of subcontractors and suppliers was justified, appellants have not shown themselves entitled to relief on appeal. Under the question submitted, Shrum did not have to prove that appellants breached the contract first or prevented his performance—only that their actions materially hindered his performance. The evidence regarding the inadequacy of the plans for a project of this complexity supports the jury's finding. The evidence is also sufficient to allow the jury to find that delays in supplies and labor caused by appellants' practices materially hindered Shrum's ability to schedule the work in a way that permitted timely and professional completion of the house.

This evidence also supports the jury's finding that Shrum has zero responsibility for the Bullocks' damages. As appellants note, the court instructed the jury not to answer the proportionate responsibility question with regard to Shrum based on their finding that Shrum's failure to comply with the ICMA was excused. We have found the evidence legally and factually sufficient to support the finding of excuse. Contrary to appellants' argument, we do not believe that the mere fact that the jury filled in the blank for Shrum's percentage of responsibility with a "0" is reversible error. It is at most harmless error because an empty blank has the same legal effect as a zero. Any award of attorneys' fees to Shrum is based on the answers to the liability questions between Shrum and appellants, not a redundant assessment that Shrum has no responsibility for the Bullocks's damages. Although there was evidence supporting a finding that Shrum was responsible for at least part of the Bullocks' damages, sufficient evidence supported the jury's finding that

31

excused his responsibility under the ICMA. We find no reversible error in the finding that Shrum

had zero proportionate responsibility for the Bullocks' damages.

*Award of attorneys' fees to Shrum against appellants*

Appellants contend that Shrum is not entitled to attorneys' fees as a matter of law.

They assert that Shrum claimed entitlement to attorneys' fees based on his contract and under

the DTPA. Appellants contend that Shrum is not entitled to attorneys' fees under the contract

because the evidence conclusively shows that he was partly responsible for the damages to the

Bullocks. Appellants contend that Shrum is not entitled to attorneys' fees under the DTPA because

their claims had a "more than ample basis in law and fact."

We conclude that the trial court properly awarded Shrum attorneys' fees against

DCI under the ICMA. Paragraph eight of the ICMA provides as follows:

> Should any litigation be commenced between the parties to this Agreement
> concerning said business, this Agreement, or the rights and duties of any party in
> relation hereto, said party prevailing in such litigation shall be entitled, in addition
> to such other relief as may be granted, to a reasonable sum as and for attorney's fees
> in such litigation which shall be determined by the Court in such litigation or in a
> separate action brought for that purpose.[18]

DCI sued Shrum for breach of contract, among other causes of action. Although the jury found that

Shrum breached his duty under the ICMA to handle the day-to-day management of onsite operations

at the house, the jury also found that his failure to comply was excused and that he bore no

---

[18] Attorneys' fees are available under paragraph eight independent of any right to indemnity under paragraph three of the agreement, which, as DCI argues, allows Shrum to recover only if the damages are "caused without any fault[] of Shrum."

responsibility for the Bullocks' damages. DCI, by contrast, was held responsible for 80% of the Bullocks' damages. DCI plainly sued Shrum concerning the ICMA and their rights and duties in relation to it, and Shrum was found not liable to DCI. The court did not err by deeming Shrum the prevailing party in litigation between the parties concerning their duties under the ICMA and awarding attorneys' fees against DCI accordingly. Having found Shrum eligible for attorneys' fees as a prevailing party in a suit concerning rights and duties under the ICMA, we need not explore whether Shrum is entitled to attorneys' fees from DCI under the DTPA.

We conclude, however, that the trial court erred by awarding attorneys' fees to Shrum from Daneshjou, individually. Shrum was not entitled to attorneys' fees from Daneshjou based on any provision of the ICMA because it was an agreement between Shrum and DCI—not Daneshjou.[19] Shrum cannot claim attorneys' fees from Daneshjou under the DTPA based either on appellants' claims for violations or for indemnity under the DTPA. Section 17.50 expressly authorizes awards of attorneys' fees only "[o]n a finding by the court that an action *under this section* was groundless in fact or law or brought in bad faith . . . ." Tex. Bus. & Com. Code Ann. § 17.50(c) (West Supp. 2008). There is no showing, however, that Daneshjou, individually, sought recovery under section 17.50 for violations by Shrum.[20] Daneshjou did request indemnity under the DTPA for any

---

[19] There is no finding by the jury or the court supporting a piercing of the corporate veil to award Shrum attorneys' fees against Daneshjou individually.

[20] Shrum relies on the following language from appellants' amended complaint to show that Daneshjou, individually, made claims for violations of the DTPA:

All of the misconduct described herein by the Bullocks and Shrum is the producing and proximate cause of damages to DCI and Daneshjou . . . .

liability he had to the Bullocks. *See* Tex. Bus. & Com. Code Ann. § 17.555 (West 2002). However, section 17.555 does not authorize an award of attorneys' fees and does not entitle a litigant to attorneys' fees under section 17.50. Shrum, therefore, is not entitled to an attorneys' fees award against Daneshjou, individually. We conclude that the award of attorneys' fees to Shrum against Daneshjou was error as a matter of law.

Judgment against King's Contracting, Sandoval, and Montiel

Appellants contend that the trial court erred by failing to enter a judgment notwithstanding the jury's verdict assessing only a 1% share of proportionate responsibility each against King's Contracting, Montiel, and Sandoval. A judgment notwithstanding the verdict is authorized only when a directed verdict would have been proper. *Carr v. Austin Forty*, 744 S.W.2d 267, 273 (Tex. App.—Austin 1987, writ denied). Appellants also contend that this part of the judgment is supported by no or factually insufficient evidence, or is against the great weight and preponderance of the evidence. Appellants assert that "these three subcontractors performed a substantial amount of the work that was allegedly deficient; thus, their share of responsibility should be greater than 1% each." Appellants assert that the work performed by these three subcontractors is in "the ballpark of $4 million."

---

This text is a statement summarizing several pages of allegations concerning many causes of action. Shrum acknowledges, however, that appellants earlier specifically asserted only that DCI was a consumer—a requirement to make claims under the DTPA. *See* Tex. Bus. & Com. Code Ann. § 17.50 (West Supp. 2008). We conclude that this excerpt did not mean that *all* of the misconduct produced damages to *both* DCI and Daneshjou, implicitly inserting an allegation that Daneshjou is a consumer who requests damages under every theory DCI asserted.

The jury found that these three subcontractors breached a warranty and their contract with DCI and were each responsible for 1% of the damages to the Bullocks.[21] The jury also found that DCI's total actual cost of construction was $4,072,919. This unchallenged finding is incompatible with appellants' assertion on appeal that the work of these three subcontractors was alone in the ballpark of $4 million. Evidence showed that King was the primary framer of the roof and that Sandoval installed the flat roof and the clay tile. Montiel installed masonry. There was no claim that any of these three subcontractors was responsible for the decisions underlying the billing disputes or the landscaping.[22]

The roof was undisputedly complex, with many angles, features, and types of roofing. There was expert testimony that the complexity of the design, coupled with the failure of the designer (Daneshjou) to produce detailed plans, doomed the roof to progressive collapse. Melton testified that he could not imagine how a framer could build the roof without a roof framing plan. Parker, appellants' expert who rejected Melton's theory of progressive collapse, nevertheless testified that he could not have built the house from the plans provided. Mark McGivern, one of the Bullocks' experts, testified that he was "critical of" King (as well as Shrum and the inspectors) and

---

[21] We note that the jury awarded damages to the Bullocks based on fraud, DTPA violations, and breach of fiduciary duty—actions which none of the three subcontractors were found to have committed.

[22] Appellants repeatedly urge that the jury unfairly held them responsible for almost all of the $7 million damage verdict and that the subcontractors should bear a larger share of the burden. Appellants fail to mention that $3.35 million of the damage award is for actual and exemplary damages related to overbilling—causes of action for which the subcontractors were not alleged to be responsible. Another $1,184,332.19 of the award is for attorneys' fees. The subcontractors' proportionate responsibility was computed based on the $2,145,000 award for repairs, demolition, and reconstruction.

stated that a framer should have knowledge of how to build the building according to proper design. McGivern said it was the worst-built attic he had ever seen. He and Skoller agreed that there was improper nailing. McGivern found gaps in the framing, but Skoller testified that these were due to bad cuts rather than movement. Melton testified that the roof was in progressive collapse and at risk of sudden collapse, but Parker and Skoller rejected that assessment, with Parker noting the absence of collapse in the four years before trial. There was testimony that deficiencies in the flat roofing, adaptations and breaking of the clay tiles, and inadequacies in the flashing caused most of the leaks. There was also testimony that the deficiencies were easily remediable, the adaptation of the clay tiles was not a widespread problem, that some tiles were broken by subsequent visitors to the roof, that the broken tiles and incorrect flashing could be repaired, and that most of the leaks had been stopped. McGivern, however, testified that the roof could move and cause new leaks to appear.

The masonry was also damaged by water. Clarke Griffith, forensic architect, found tears in the water-resistant barrier, an absence of airspace between mortar and stone and the underlayment, and gaps in mortar. He found an absence of weepholes causing ponding and rot of the underlayment. He concluded that the 30-foot veneer chimney was a code violation. McGivern described the masonry as a mess. Melton and Parker agreed that all the stone would have to be removed. Daneshjou testified that removing stones might have led to rips in the underlayment.

The jury is given wide latitude in performing its sworn duty to serve as fact-finder in allocating responsibility. *See Rosell v. Central W. Motor Stages, Inc.*, 89 S.W.3d 643, 659 (Tex. App.—Dallas 2002, no pet.). Even if the evidence could support a different percentage allocation of responsibility, we may not substitute our judgment for that of the jury. *See id.*; *see also*

*Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 478 (Tex. App.—Houston [14th Dist.] 1998, pet.

denied).

While there is clear evidence of substandard construction, there is ample evidence

to support the view that the roof problems were inescapably rooted in deficient or inadequate design.

There is clear evidence of problems with the masonry, but there is also evidence of inadequate

design (as in the intersections of roofing and masonry). There is also evidence supporting findings of

damages in other aspects of the project that the jury considered when apportioning responsibility

such as the boathouse, the guesthouse, the retaining wall, the gate, and others. The evidence

supports the verdict, and the trial court did not err by denying the motion for judgment

notwithstanding the verdict with respect to the jury's assignment of 1% responsibility each to King,

Sandoval, and Montiel.

Assessment of zero responsibility for other subcontractors

Appellants contend that the trial court erred by determining that Loma, Hood,

Hernandez, LOC, and Austin Fine Floors were responsible for no damages.[23] The jury made

the finding in response to the proportionate responsibility question, and the trial court refused to

disturb that finding by either granting judgment notwithstanding the verdict or a new trial.

Appellants contend that the evidence shows that these subcontractors "performed sufficient work

on the project to bear some of the responsibility." Loma did the rough grading for the landscaping,

---

[23] These are the subcontractors whose share of the responsibility was determined by the jury. We have previously addressed in this opinion appellants' complaints about subcontractors whose share of the responsibility was not submitted to the jury.

Hood installed electric wiring, Hernandez did masonry work, LOC performed inspections of some of the work including framing, and Austin Fine Floors did tiling and other flooring installation. Appellants do not cite any evidence to support their assertion that the evidence compels a finding that these appellees were more than zero percent responsible for the Bullocks' damages. That is sufficient grounds to reject this issue entirely. *See* Tex. R. App. P. 38.1(i); *Telecheck Servs., Inc. v. Elkins*, 226 S.W.3d 731, 737 (Tex. App.—Dallas 2007, no pet.); *Waldrep v. Texas Employers Ins. Ass'n*, 21 S.W.3d 692, 707 (Tex. App.—Austin 2000, pet. denied). Their argument is a more general, impassioned plea that justice demands that someone other than the architect and builder must share in the 97% responsibility assigned to them.

There is scant if any evidence directly linking these subcontractors to substandard work. Where there is some evidence that the general type of work performed was substandard, there is evidence casting doubt on whether the work was the source of damages to the Bullocks. More critically, there is little if any evidence linking these particular subcontractors to deficient work. We have reviewed the record and conclude that the evidence is legally and factually sufficient to support the jury's verdict assessing a zero percent share of responsibility to Loma,[24] Hood, Hernandez, LOC, and Austin Fine Floors.

---

[24] As noted above, Loma was granted take nothing, no evidence summary judgment on the merits of appellants' direct claims for damages by Loma. *Daneshjou*, 2008 Tex. App. LEXIS 6036, at *19-24. There is no reversible error in the jury's finding of zero responsibility for a party that had been granted a take nothing summary judgment on the merits before trial.

38

Neither the arguments appellants raise in their brief nor our review of the record persuades us that either the jury's assignment of zero percent responsibility to these subcontractors, or the trial court's refusal to grant judgment notwithstanding that verdict, constitutes reversible error.

**Conclusion**

We conclude that the trial court erred by assessing attorneys' fees for Shrum against Daneshjou individually. Accordingly, we reverse the judgment in that regard and render judgment that Shrum take nothing on his claim for attorneys' fees against Daneshjou, individually. We affirm the judgment of the district court in all other respects.

_____

G. Alan Waldrop, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed:   March 27, 2009

39